# U.S. District Court
## Western District of Missouri (Kansas City)
## CIVIL DOCKET FOR CASE #: 4:21-cv-00363-SRB

D.W. et al v. Walmart Inc.
Assigned to: District Judge Stephen R. Bough
Cause: 42:1396 - Tort Negligence

Date Filed: 05/25/2021
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

## **Plaintiff**

**D. W.**
*individually and on behalf of all others*
*similarly situated*

represented by **Maureen M. Brady**
McShane & Brady LLC
1656 Washington Street
Suite 140
Kansas City, MO 64108
(816) 888-8010
Fax: (816) 332-6295
Email: mbrady@mcshanebradylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anne W. Schiavone**
Holman Schiavone, LLC
4600 Madison Avenue
Suite 810
Kansas City, MO 64112
(816) 283-8738
Fax: (816) 283-8739
Email: aschiavone@hslawllc.com
*ATTORNEY TO BE NOTICED*

**Lucy McShane**
McShane & Brady LLC
1656 Washington Street
Suite 140
Kansas City, MO 64108
(816) 888-8010
Fax: (816) 332-6285
Email: lmcshane@mcshanebradylaw.com
*ATTORNEY TO BE NOTICED*

**Nicholas Luedecke**
McShane & Brady, LLC
1656 Washington St Ste 120
Kansas City, MO 64108
816-888-8010
Email: nick@mcshanebradylaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**NEC Networks, LLC**
*doing business as*
Capturerx

represented by **Kevin P. Clark**
Litchfield Cavo LLP - StL
222 South Central Avenue
Suite 110
Clayton, MO 63105
314-725-1227
Fax: 314-725-3006
Email: clark@litchfieldcavo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Taylor Brooke Concannon Hausmann**
Husch Blackwell LLP - KCMO
4801 Main Street
Suite 1000
Kansas City, MO 64112-2551
816-983-8000
Fax: 816-983-8080
Email:
taylor.hausmann@huschblackwell.com
*TERMINATED: 08/11/2021*

**Defendant**

**Walmart Inc.**

represented by **Donald Houser**
Alston & Bird
1201 W. Peachtree St.
Suite 4900
Atlanta, GA 30309
(404) 881-7584
Email: donald.houser@alston.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristine M Brown**
Alston & Bird
1201 W. Peachtree St.
Suite 4900
Atlanta, GA 30309
(404) 881-7584
Email: kristy.brown@alston.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ramona Palmer-Eason**
Armstrong Teasdale LLP-KCMO
2345 Grand Boulevard
Suite 1500
Kansas City, MO 64108
816-221-3420

Fax: 816-221-0786
Email: rpalmereason@atllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/25/2021 | 1 | COMPLAINT against D. W. filed by Maureen M. Brady on behalf of All Plaintiffs. Filing fee $402, receipt number AMOWDC-7430020. Service due by 8/23/2021 unless otherwise directed by the court.(Brady, Maureen) (Additional attachment(s) added on 5/27/2021: # 1 Civil Cover Sheet) (Woods, Gloria). (Entered: 05/25/2021) |
| 05/26/2021 | 2 | **NOTICE OF INCLUSION FOR MEDIATION AND ASSESSMENT PROGRAM (MAP). REVIEW NOTICE AND MAP GENERAL ORDER CAREFULLY FOR IMPORTANT CHANGES, DEADLINES AND REQUIREMENTS.**<br><br>**Notice of MAP assignment to an outside mediator.** (Attachments: # 1 MAP General Order)(Woods, Gloria) (Entered: 05/26/2021) |
| 05/28/2021 | | SUMMONS ISSUED as to NEC Networks, LLC, Walmart Inc.. (Woods, Gloria) (Entered: 05/28/2021) |
| 05/28/2021 | 3 | MOTION for Order (SEALED) filed by Maureen M. Brady on behalf of All Plaintiffs. Suggestions in opposition/response due by 6/11/2021 unless otherwise directed by the court. (Brady, Maureen) (Entered: 05/28/2021) |
| 05/28/2021 | 4 | MOTION for order to keep Plaintiff Identity Private filed by Maureen M. Brady on behalf of All Plaintiffs. Suggestions in opposition/response due by 6/11/2021 unless otherwise directed by the court. (Brady, Maureen) (Entered: 05/28/2021) |
| 05/28/2021 | 5 | NOTICE to take deposition of CaptureRx Corporate Rep filed by Maureen M. Brady on behalf of Plaintiff D. W..(Brady, Maureen) (Entered: 05/28/2021) |
| 05/28/2021 | 6 | NOTICE to take deposition of Walmart Corporate Rep filed by Maureen M. Brady on behalf of Plaintiff D. W..(Brady, Maureen) (Entered: 05/28/2021) |
| 05/28/2021 | 7 | CERTIFICATE OF SERVICE by All Plaintiffs filed by Maureen M. Brady on behalf of Plaintiff D. W..(Brady, Maureen) (Entered: 05/28/2021) |
| 05/28/2021 | | NOTICE OF DOCKET MODIFICATION. A modification has been made to the document filed on 5/28/2021 as Document No. 4, MOTION for order to keep Plaintiff Identity Private. The proposed order has been deleted. Per Administrative Procedures any proposed orders are to be emailed to the Courtroom Deputy in Word format. This is a text entry only - no document is attached. (Houston, Kiambu) (Entered: 05/28/2021) |
| 06/01/2021 | 8 | ORDER granting 3 motion to keep the identity of plaintiff private. Signed on 6/1/2021 by District Judge Stephen R. Bough. (Houston, Kiambu) (Entered: 06/01/2021) |
| 06/28/2021 | 9 | NOTICE of appearance by Ramona Palmer-Eason on behalf of Walmart Inc. (Attorney Ramona Palmer-Eason added to party Walmart Inc.(pty:dft))(Palmer-Eason, Ramona) (Entered: 06/28/2021) |
| 06/29/2021 | 10 | Consent MOTION for extension of time to file answer re 1 Complaint, *(Defendant Walmart Inc.'s Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Complaint)* filed by Ramona Palmer-Eason on behalf of Walmart Inc.. Suggestions in opposition/response due by 7/13/2021 unless otherwise directed by the court. (Related document(s) 1 ) (Palmer-Eason, Ramona) (Entered: 06/29/2021) |

| 06/29/2021 | 11 | Before the Court is Defendant WalMart Inc.'s Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Complaint. (Doc. #10). For good cause stated, the motion is granted. Defendant WalMart is hereby granted an extension of time until and including August 6, 2021, to answer or otherwise respond to Plaintiff's complaint. Signed on 6/29/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 06/29/2021) |
|---|---|---|
| 06/29/2021 | 12 | Motion to allow Donald Houser to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7474601) filed by Ramona Palmer-Eason on behalf of Walmart Inc.. (Palmer-Eason, Ramona) (Entered: 06/29/2021) |
| 06/29/2021 | 13 | Motion to allow Kristine McAlister Brown to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7474629) filed by Ramona Palmer-Eason on behalf of Walmart Inc.. (Palmer-Eason, Ramona) (Entered: 06/29/2021) |
| 06/29/2021 | 14 | ORDER granting 12 motion to appear pro hac vice entered by Clerk of Court. Attorney Donald Houser for Walmart Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.

Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Berner, Crystal) (Entered: 06/29/2021) |
| 06/29/2021 | 15 | ORDER granting 13 motion to appear pro hac vice entered by Clerk of Court. Attorney Kristine M. Brown for Walmart Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.

Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Berner, Crystal) (Entered: 06/29/2021) |
| 07/07/2021 | 16 | MOTION for extension of time *to Answer or Otherwise Respond to Complaint, Unopposed* filed by Taylor Brooke Concannon Hausmann on behalf of NEC Networks, LLC. Suggestions in opposition/response due by 7/21/2021 unless otherwise directed by the court. (Attorney Taylor Brooke Concannon Hausmann added to party NEC Networks, LLC(pty:dft))(Concannon Hausmann, Taylor) (Entered: 07/07/2021) |
| 07/07/2021 | 17 | Before the Court is Defendant NEC Networks, LLCs Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Complaint. (Doc. #16.) For good cause shown the motion is GRANTED. Defendant NEC shall file its answer or other response on or before August 13, 2021. Signed on 7/7/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 07/07/2021) |
| 07/23/2021 | 18 | MOTION for leave to file excess pages *(Defendant Walmart Inc.'s Unopposed Motion to Enlarge Page Limit)* filed by Ramona Palmer-Eason on behalf of Walmart Inc.. Suggestions in opposition/response due by 8/6/2021 unless otherwise directed by the court. (Palmer-Eason, Ramona) (Entered: 07/23/2021) |
| 07/23/2021 | 19 | Before the Court is Defendant Walmart Inc.s Unopposed Motion to Enlarge Page Limit. (Doc. #18). For good cause stated, the motion is granted. Defendant Walmart, Inc. may file its forthcoming motion to dismiss in a length up to, and including, twenty five (25) pages. |

| | | Signed on 7/23/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Crocker, Susan) (Entered: 07/23/2021) |
|---|---|---|
| 08/06/2021 | 20 | DISCLOSURE OF CORPORATE INTERESTS filed by Ramona Palmer-Eason on behalf of Defendant Walmart Inc..(Palmer-Eason, Ramona) (Entered: 08/06/2021) |
| 08/06/2021 | 21 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Ramona Palmer-Eason on behalf of Walmart Inc.. Suggestions in opposition/response due by 8/20/2021 unless otherwise directed by the court. (Palmer-Eason, Ramona) (Entered: 08/06/2021) |
| 08/06/2021 | 22 | SUGGESTIONS in support re 21 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Ramona Palmer-Eason on behalf of Defendant Walmart Inc.. (Attachments: # 1 Exhibit A - Breach Notification)(Related document(s) 21 ) (Palmer-Eason, Ramona) (Entered: 08/06/2021) |
| 08/11/2021 | 23 | NOTICE of appearance by Kevin P. Clark on behalf of NEC Networks, LLC (Attorney Kevin P. Clark added to party NEC Networks, LLC(pty:dft))(Clark, Kevin) (Entered: 08/11/2021) |
| 08/11/2021 | 24 | MOTION to withdraw as attorney filed by Taylor Brooke Concannon Hausmann on behalf of NEC Networks, LLC. Suggestions in opposition/response due by 8/25/2021 unless otherwise directed by the court. (Concannon Hausmann, Taylor) (Entered: 08/11/2021) |
| 08/11/2021 | 25 | Before the Court is a Motion to Withdraw as Counsel. (Doc. #24.) Upon review, and for good cause shown, the motion is GRANTED. Jeffrey J. Simon and Taylor Concannon Hausmann of Husch Blackwell LLP are hereby WITHDRAWN as counsel for Defendant NEC Networks, LLC d/b/a CAPTURERX (NEC). NEC shall continue to be represented by Kevin P. Clark of Litchfield Cavo LLP. Signed on 8/11/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 08/11/2021) |
| 08/12/2021 | 26 | MOTION for extension of time to file answer filed by Kevin P. Clark on behalf of NEC Networks, LLC. Suggestions in opposition/response due by 8/26/2021 unless otherwise directed by the court. (Clark, Kevin) (Entered: 08/12/2021) |
| 08/12/2021 | 27 | Before the Court is Defendant NEC Networks, LLC's Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Complaint. (Doc. #26.) For good cause shown the motion is GRANTED. Defendant NEC shall file its answer or other response on or before September 10, 2021. Signed on 8/12/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 08/12/2021) |
| 08/16/2021 | 28 | RULE 16 NOTICE. Proposed scheduling order due by 9/24/2021. Scheduling Conference set for 10/4/2021 at 1:40 p.m. in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. Signed on 8/16/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 08/16/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 08/17/2021 11:21:32 | | | |
| PACER Login: | mbrady1656 | Client Code: | Woodrome |
| Description: | Docket Report | Search Criteria: | 4:21-cv-00363-SRB |
| Billable Pages: | 4 | Cost: | 0.40 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **D.W., individually and on behalf of all others similarly situated,** | ) <br> ) <br> ) |
| **Plaintiffs,** | ) <br> ) <br> ) |
| v. | )    Case No. <br> ) |
| **NEC NETWORKS, LLC. d/b/a CAPTURERX** <br> Serve Registered Agent <br> Christopher A. Hotchkiss <br> 10100 Reunion Pl. <br> San Antonio, TX 78216 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| And | ) <br> ) |
| **WALMART INC.** <br> Serve Registered Agent <br> CT Corporation System <br> 120 S Central Avenue <br> Clayton, MO 63105 | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| **Defendants**. | ) |

## CLASS ACTION COMPLAINT FOR DAMAGES

COMES NOW D.W. ("Plaintiff"), individually and on behalf of all Missouri citizens who are similarly situated for his Class Action Complaint for Damages against Defendant NEC Networks LLC d/b/a CaptureRx ("CaptureRx") and Defendant Walmart, Inc. ("Walmart")(collectively "Defendants"), respectfully states and alleges as follows:

## NATURE OF THE CASE

1.      This is a class action brought by Plaintiff, individually and on behalf of all Missouri citizens who are similarly situated (*i.e.*, the Class Members), seeking to redress Defendants' willful and reckless violations of their privacy rights.  Plaintiff and the other

Class Members are patients of CaptureRx who entrusted their personal health information ("PHI") and personally identifiable information ("PII") to Defendants. Defendants betrayed Plaintiffs' trust by failing to properly safeguard and protect their PHI and PII and publicly disclosing their PHI and PII without authorization in violation of Missouri common law.

2.      This action pertains to Defendants' unauthorized disclosure of the Plaintiff's PHI and PII that occurred on or about February 6, 2021 (the "Breach").

3.      Defendants disclosed Plaintiff's and the other Class Members' PHI and PII to unauthorized persons as a direct and/or proximate result of Defendant's failure to safeguard and protect their PHI and PII.

4.      The wrongfully disclosed PHI and PII included, *inter alia*, Plaintiff's and the other Class Members' first name, last name, date of birth, and prescription information.

5.      Defendants flagrantly disregarded Plaintiff's and the other Class Members' privacy and property rights by intentionally, willfully and recklessly failing to take the necessary precautions required to safeguard and protect Plaintiff's and the other Class Members' PHI and PII from unauthorized disclosure. Plaintiff's and the other Class Members' PHI and PII was improperly handled, inadequately protected, readily able to be copied by thieves and not kept in accordance with basic security protocols. Defendant's obtaining of the information and sharing of same also represent a flagrant disregard of Plaintiff's and the other Class Members' rights, both as to privacy and property.

6.      Plaintiff has standing to bring this action because as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, Plaintiff

2

has incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy and/or (ii) the additional damages set forth in detail below, which are incorporated herein by reference.

7.     Defendant's wrongful actions and/or inaction and the resulting Breach have also placed Plaintiff and the other Class Members at an imminent, immediate and continuing increased risk of identity theft, identity fraud and medical fraud.  Indeed, Javelin Strategy & Research ("Javelin"), a leading provider of quantitative and qualitative research, released its 2012 Identity Fraud Report ("the Javelin Report"), quantifying the impact of data breaches.  According to the Javelin Report, individuals whose PHI and PII is subject to a reported data breach—such as the Data Breach at issue here—are approximately 9.5 times more likely than the general public to suffer identity fraud and/or identity theft.  Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported, and a high probability that criminals who may now possess Plaintiff's and the other Class Members' PHI and PII and not yet used the information will do so at a later date or re-sell it.

8.     As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

3

9.     Plaintiff and Class members have also suffered and are entitled to damages for the lost benefit of their bargain with Defendant.  Plaintiff and members of the Class paid CaptureRx and Walmart for its services including it protecting their PHI and PII. The lost benefit of the bargain is measured by the difference between the value of what Plaintiff and the members of the Class should have received when they paid for its services, and the value of what they actually did receive; services without adequate privacy safeguards.  Plaintiff and members of the Class have been harmed in that they (1) paid more for privacy and confidentiality than they otherwise would have, and (2) paid for privacy protections they did not receive.    In that respect, Plaintiff and the members of the Class have not received the benefit of the bargain and have suffered an ascertainable loss.

10.     Additionally, because of Defendant's conduct, Plaintiff and members of the Class have been harmed in that Defendants have breached its common law fiduciary duty of confidentiality owed to Plaintiff and member of the Class.

11.     Accordingly, Plaintiff and the other Class Members seek redress against Defendants for breach of implied contract, breach of contract, invasion of privacy by the public disclosure of private facts, common law negligence, breach of Missouri Merchandising Practices Act, negligent training and supervision, and breach of fiduciary duty of confidentiality.

12.     Plaintiff, individually and on behalf of the other Class Members, seeks all (i) actual damages, economic damages, and/or nominal damages, (ii) injunctive relief, and (iii) attorneys' fees, litigation expenses, and costs.

## JURISDICTION AND VENUE

13.    This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d) ("CAFA") where the plaintiff is a citizen of a state different from any defendant and where the amount in controversy for the putative class members in the aggregate exceeds the sum or value of $5,000,000, exclusive of interest and costs.

14.    Venue is proper in the Western District of Missouri, pursuant to 28 U.S.C. §§89(c), 1391 because the acts complained of occurred and Defendants are located in Kansas City, Jackson County, Missouri.

## PARTIES

15.    Plaintiff is an adult residing in Lowry City, St. Clair County, Missouri.

16.    Defendant NEC Networks LLC d/b/a CaptureRx is, upon information and belief, a Texas Corporation with its headquarters in San Antonio, Texas. Defendant can be served at its Registered Address Christopher A. Hotchkiss at 10100 Reunion Place, San Antonio, Texas 78216.

17.    Defendant Walmart, Inc., upon information and belief, a Arkansas Corporation with its headquarters in Bentonville, Arkansas. Defenand can be served by its Registered Agent CT Corporation System at 120 S Central Avenue, Clayton, Missouri 63105.

## BACKGROUND FACTS

18.    Certain allegations are made upon information and belief.

5

19.     Defendants are health care providers pursuant to state and federal law, providing health care and medical services to the general public.

20.     Defendant CaptureRx is licensed and doing business in Missouri.

21.     Defendant Walmart is operating at 1712 E Ohio St., Clinton, MO 64735.

22.     Plaintiff and the proposed Class Members are patients of Defendant CaptureRx and Defendant Walmart.

23.     As a part of its business operations, Defendants collect and maintain PHI and PII of its patients.

24.     Plaintiffs were patients of CaptureRx and Walmart and, as a result, provided their PHI and PII to Defendant.

25.     Plaintiffs entered into an implied contract with Defendants for the adequate protection of their PHI and PII.

26.     Defendants are required to maintain the strictest privacy and confidentiality of Plaintiff and the proposed Class Members' medical records and other PHI and PII.

27.     Defendant Capture Rx posts its privacy practices online, stating, in relevant part:

**Information sharing**

CaptureRx will not sell, trade, rent, or voluntarily provide to others any personally identifiable information collected on our Website. We may, however, disclose such personally identifiable information when we believe in good faith that it is required to be disclosed to protect our rights, protect your safety or the safety of others, investigate fraud, by law or by an appropriate law enforcement or governmental authority.

Our Website includes links to other websites whose privacy practices may differ from those of CaptureRx.  If you submit personal information to any of

6

those websites, your information is governed by their privacy policies. We encourage you to carefully read the privacy policy of any website you visit.

We also may from time to time engage third parties to track and analyze non-personally identifiable usage and volume statistical information from visitors to our Website to help us administer our Website and improve its quality. Such third parties may use cookies to help track visitor behavior. Such cookies will not be used to associate individual Website visitors to any personal information. Except as otherwise set forth herein, all data collected by such third parties on our behalf is used only to provide us with information on Website usage and is not shared with any other third parties.

**Information security**

CaptureRx takes various security measures to protect information received online. Access to information stored on our servers is restricted to CaptureRx employees or agents who need to know such information to perform a specific job on CaptureRx's behalf.

Although CaptureRx makes a genuine effort to ensure the security of activities conducted on this Website, no transmission over the Internet, or method of electronic storage, is completely secure. Accordingly, CaptureRx cannot and does not guarantee that any activities conducted on this Website will be absolutely secure.

**Information storage**

Information may be copied, stored, and retained on our database servers or as part of our normal backup processes. Servers and backup information is subject to physical, electronic, and managerial security measures and access is restricted to authorized IT associates.

Our Website includes social media widgets, such as the share this button or interactive mini-programs that run on our Website. These features may collect your IP address, which page you are visiting on our Website, and may set a cookie to enable the feature to function properly. Social media features and widgets are either hosted by a third party or hosted directly on our Website. Your interactions with these features are governed by the privacy policy of the company providing it.

https://www.capturerx.com/privacy-policy/

7

28.     Defendant Walmart posts its privacy practices online, stating, in relevant part:

> This Notice of Privacy Practices describes the privacy practices of: Walmart Health & Wellness operations, Sam's Club Health & Wellness operations, and the health care practices and partner providers in Walmart Health, including the Walmart Health medical, dental, optometry, and behavioral health practices, which have formed and participate in an organized health care arrangement. This Notice applies to all facilities and service delivery sites of those health care providers, such as the Walmart and Sam's Club locations where Walmart Health practices and partner providers operate, and Walmart or Sam's Club pharmacy, vision center, optical, and clinic locations. We understand that your medical information is personal and we are committed to protecting it. We are required by law to maintain the privacy of your protected health information ("PHI"), to give you this Notice of our legal duties and privacy practices concerning your PHI, and to report to you any security breach involving your unsecured PHI. We must follow the terms of the current Notice.

https://corporate.walmart.com/privacy-security/notices/

29.     On February 2, 2021, Defendants disclosed Plaintiff's and the proposed Class Members' PHI and PII to unauthorized third parties (the "Breach").

30.     On May 5, 2021, Defendants sent out a notice in the mail to Plaintiff and the proposed Class Members

31.     On or about the period between February 19, 2021, Defendants became aware of unusual activity involving certain of its electronic files.

32.     On February 19, 2021, Defendants' investigation determined that certain files were accessed and acquired on February 6, 2021 without authorization.

33.     Defendants' notice included information on "monitoring individuals accounts" to help Plaintiff and the proposed Class Members combat the threat of identity theft.

8

34.     The disclosure of the PHI and PII at issue was a result of the Defendant's inadequate safety and security protocols governing PHI and PII.

35.     The wrongfully disclosed PHI and PII included, *inter alia*, Plaintiff's and the other Class Members' first name, last name, date of birth, and prescription information.

36.     Upon information and belief, the Breach affected thousands of Defendant's patients.

37.     As a direct and/or proximate result of Defendant's failure to properly safeguard and protect the PHI and PII of its patients, Plaintiff's and the other Class Members' PHI and PII was stolen, compromised and wrongfully disseminated without authorization.

38.     Defendants have a duty to its patients to protect them from wrongful disclosures.

39.     As health care providers, Defendants are required to train and supervise its employees regarding the policies and procedures as well as the State and Federal laws for safeguarding patient information.

40.     Defendants are covered entities and/or business associates pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"). *See* 45 C.F.R. § 160.102. Defendants must therefore comply with the HIPAA Privacy Rule and Security Rule. *See* 45 C.F.R. Part 160 and Part 164, Subparts A through E.

9

41.     Defendants are covered entities and/or business associates pursuant to the Health Information Technology Act ("HITECH")[1].  *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

42.     The HIPAA and HITECH rules work in conjunction with the already established laws of privacy Missouri.  HIPAA and HITECH do not recognize an individual right of claim for violation but provide the guidelines for the standard of procedure dictating how patient medical information should be kept private.

43.     HIPAA's Privacy Rule, otherwise known as "Standards for Privacy of Individually Identifiable Health Information," establishes national standards for the protection of health information.

44.     HIPAA's Security Rule, otherwise known as "Security Standards for the Protection of Electronic Protected Health Information," establishes national security standards for the protection of health information that is held or transferred in electronic form. See 42 C.F.R. §§ 164.302-164.318.

45.     HIPAA limits the permissible uses of "protected health information" and prohibits the unauthorized disclosure of "protected health information." 45 C.F.R. § 164.502. HIPAA requires that covered entities implement appropriate administrative, technical, and physical safeguards for this information and requires that covered entities reasonably safeguard protected health information from any intentional or unintentional

---

[1] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

use or disclosure that is in violation of the standards, implementation specifications or other requirements of this subpart. *See* 45 C.F.R. § 164.530(c).

46.    HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

47.    HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

48.    Under HIPAA:

Protected health information means individually identifiable health information:

(1) Except as provided in paragraph (2) of this definition, that is:

(i) Transmitted by electronic media;

(ii) Maintained in electronic media; or

(iii) Transmitted or maintained in any other form or medium.[2]

49.    HIPAA and HITECH obligated Defendants to implement technical policies and procedures for electronic information systems that maintain electronic protected health information so that such systems were accessible only to those persons or software

---

[2] 45 C.F.R. § 160.103

11

programs that had been granted access rights and who have a working need to access and view the information. *See* 45 C.F.R. § 164.312(a)(1); *see also* 42 U.S.C. §17902.

50. HIPAA and HITECH also obligated Defendants to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

51. HIPAA further obligated Defendants to ensure that its workforce complied with HIPAA security standard rules (*see* 45 C.F.R. § 164.306(a)(4)) to effectively train its workforces on the policies and procedures with respect to protected health information, as necessary and appropriate for those individuals to carry out their functions and maintain the security of protected health information. *See* 45 C.F.R. § 164.530(b)(1).

52. HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." *See* US Department of Health & Human Services, Security Rule Guidance Material.[3] The list of

---

[3] http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html

12

resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." *See* US Department of Health & Human Services, Guidance on Risk Analysis.[4]

53.     Should a health care provider experience an unauthorized disclosure, it is required to conduct a Four Factor Risk Assessment (HIPAA Omnibus Rule).  This standard requires, "A covered entity or business associate must now undertake a four-factor risk assessment to determine whether or not PHI has been compromised and overcome the presumption that the breach must be reported.  The four-factor risk assessment focuses on:

> (1) the nature and extent of the PHI involved in the incident (e.g., whether the incident involved sensitive information like social security numbers or infectious disease test results);
>
> (2) the recipient of the PHI;
>
> (3) whether the PHI was actually acquired or viewed; and
>
> (4) the extent to which the risk that the PHI was compromised has been mitigated following unauthorized disclosure (e.g., whether it was immediately sequestered and destroyed)."[5]

54.     The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, requires HIPAA covered entities and their business associates to provide notification following a breach of unsecured protected health information.

---

[4] https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html
[5] 78 Fed. Reg. 5641-46, *See also*, 45 C.F.R. §164.304

13

55.     The HIPAA Contingency Operations Rule, 45 C.F.R. §164.301(a), requires a healthcare provider to have security measures in place and train its employees and staff so that all its staff and employees know their rolls in facility security.

56.     Defendants failed to provide proper notice to Plaintiff of the disclosure.

57.     Defendants failed to conduct or improperly conducted the four factor risk assessment following the unauthorized disclosure.

58.     As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, the criminal(s) and/or their customers now have Plaintiff's and the other Class Members' compromised PHI and PII.

59.     There is a robust international market for the purloined PHI and PII, specifically medical information.  Defendant's wrongful actions and/or inaction and the resulting Breach have also placed Plaintiff and the other Class Members at an imminent, immediate and continuing increased risk of identity theft, identity fraud[6] and medical fraud.

60.     Identity theft occurs when someone uses an individual's PHI and PII, such as the person's name, Social Security number, or credit card number, without the individual's permission, to commit fraud or other crimes. *See* Federal Trade Commission, Fighting                Back                against                Identity                Theft, http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/  about-identity-theft.html (last

---

[6] According to the United States Government Accounting Office (GAO), the terms "identity theft" or "identity fraud" are broad terms encompassing various types of criminal activities.  Identity theft occurs when PII is used to commit fraud or other crimes. These crimes include, *inter alia,* credit card fraud, phone or utilities fraud, bank fraud and government fraud (theft of government services).

14

visited Jan. 18, 2013).  The Federal Trade Commission estimates that the identities of as many as nine million Americans are stolen each year. *Id.*

61.     The Federal Trade Commission correctly sets forth that "Identity theft is serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit." *Id.*

62.     Identity theft crimes often involve more than just crimes of financial loss, such as various types of government fraud (such as obtaining a driver's license or official identification card in the victim's name but with their picture), using a victim's name and Social Security number to obtain government benefits and/or filing a fraudulent tax return using a victim's information.  Identity thieves also obtain jobs using stolen Social Security numbers, rent houses and apartments and/or obtain medical services in a victim's name. Identity thieves also have been known to give a victim's PHI and PII to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record.

63.     According to the FTC, "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[7]

---

[7]     *Protecting Consumer Privacy in an Era of Rapid Change* FTC, Report March 2012 (http://www.ftc.gov/os/2012/03/120326privacyreport.pdf).

15

Furthermore, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[8]

64.     According to the Javelin Report, in 2011, the mean consumer cost of rectifying identity fraud was $354 while the mean resolution time of identity fraud was 12 hours.  *Id.* at 6.    In 2011, the consumer cost for new account fraud and existing non-card fraud increased 33% and 50% respectively.  *Id.* at 9.    Consumers who received a data breach notification had a fraud incidence rate of 19% in 2011 and, of those experiencing fraud, 43% reported their credit card numbers were stolen and 22% of the victims reported their debit card numbers were stolen.  *Id.* at 10.  More important, consumers who were notified that their PHI and PII had been breached were 9.5 times more likely to experience identity fraud than consumers who did not receive such a notification. *Id.* at 39.

65.     The unauthorized disclosure of a person's Social Security number can be particularly damaging since Social Security numbers cannot be easily replaced like a credit card or debit card.  In order to obtain a new Social Security number, a person must show evidence that someone is using the number fraudulently or is being disadvantaged by the misuse.  *See* Identity Theft and Your Social Security Number, SSA Publication No. 05-10064, October 2007*, ICN 46327 (http://www.ssa.gov/pubs/10064.html).  Thus, a person

---

[8] *Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers*, *Preliminary       FTC       Staff       Report*,       35-38       (Dec.       2010),       *available       at* http://www.ftc.gov/os/2010/12/101201privacyreport.pdf; *Comment of Center for Democracy & Technology,* cmt. #00469, at 3; *Comment of Statz, Inc.*, cmt. #00377, at 11-12.

16

whose PHI and/or PII has been stolen cannot obtain a new Social Security number until the damage has already been done.

66.     Obtaining a new Social Security number also is not an absolute prevention against identity theft. Government agencies, private businesses and credit reporting companies likely still have the person's records under the old number, so using a new number will not guarantee a fresh start. For some victims of identity theft, a new number may actually create new problems; because prior positive credit information is not associated with the new Social Security number, it is more difficult to obtain credit due to the absence of a credit history.

67.     Medical fraud (or medical identity theft) occurs when a person's personal information is used without authorization to obtain, or receive payment for, medical treatment,               services               or               goods.               *See* www.ftc.gov/bcp/edu/microsites/idtheft/consumers/resolving-specific-id-theft-problems.html. For example, as of 2010, more than 50 million people in the United States did not have health insurance according to the U.S. census. This, in turn, has led to a surge in medical identity theft as a means of fraudulently obtaining medical care. "Victims of medical identity theft [also] may find that their medical records are inaccurate, which can have a serious impact on their ability to obtain proper medical care and insurance benefits." *Id.*

68.     The Breach substantially increased Plaintiff's and the other Class Members' risk of being victimized by "phishing." "Phishing" is an attempt to acquire information (and sometimes, indirectly, money), such as usernames, passwords and credit card details

by masquerading as a trustworthy entity through an electronic communication.   *See* http://www.onguardonline.gov/articles/0003-phishing (last visited Jan. 18, 2013).

69.    Communications purporting to be from popular social websites, auction sites, online payment processors or IT administrators are commonly used to lure the unsuspecting public.  Phishing emails may contain links to websites that are infected with malware.  Phishing is typically carried out by e-mail spoofing or instant messaging, and often directs users to enter details at a fake website that looks and feels almost identical to the legitimate one.  When criminals have access to PHI and PII from a large group of similarly situated victims, it is much more feasible to develop a believable phishing spoof email.  They can then get this group of victims to reveal additional private information, such as credit cards, bank accounts, and the like.

70.    Defendants flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy and property rights, and harmed them in the process, by not obtaining Plaintiff's and the other Class Members' prior written consent to disclose their PHI and PII to any other person—as required by laws, regulations, industry standards and/or internal company standards.

71.    Defendants flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy and property rights, and harmed them in the process, by failing to safeguard and protect and, in fact, wrongfully disseminating Plaintiff's and the other Class Members' PHI and PII to unauthorized persons.

72.    Upon information and belief, Defendants flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy and property rights, and harmed

18

them in the process, by failing to keep or maintain an accurate accounting of the PHI and PII wrongfully disclosed in the Breach.

73.      Defendants flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy rights, and harmed them in the process, by failing to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiff's and the other Class Members' PHI and PII to protect against anticipated threats to the security or integrity of such information. Defendant's unwillingness or inability to establish and maintain the proper information security procedures and controls is an abuse of discretion and confirms its intentional and willful failure to observe procedures required by law, industry standards and/or their own internal policies and procedures.

74.      The actual harm and adverse effects to Plaintiff and the other Class Members, including the imminent, immediate and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendant's above wrongful actions and/or inaction and the resulting Breach requires Plaintiff and the other Class Members to take affirmative acts to recover their peace of mind, and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts—for which there is a financial and temporal cost.  Plaintiff and the other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

19

75.     Victims and potential victims of identity theft, identity fraud and/or medical fraud—such as Plaintiff and the other Class Members—typically spend hundreds of hours in personal time and hundreds of dollars in personal funds to resolve credit and other financial issues resulting from data breaches. *See Defend: Recover from Identity Theft*, http://www.ftc.gov/bcp/edu/microsites/idtheft//consumers/defend.html; *Fight Identity Theft*, www.fightidentitytheft.com.  According to the Javelin Report, not only is there a substantially  increased risk of identity theft and identity fraud for data breach victims, those who are further victimized by identity theft or identity fraud will incur an average fraud-related economic loss of $1,513 and incur an average of $354 of out-of-pocket expenses attempting to rectify the situation.  *Id*. at 6.

76.     Other statistical analyses are in accord.  The GAO found that identity thieves use PHI and PII to open financial accounts and payment card accounts and incur charges in a victim's name.  This type of identity theft is the "most damaging" because it may take some time for the victim to become aware of the theft, in the meantime causing significant harm to the victim's credit rating and finances.  Moreover, unlike other PHI and PII, Social Security numbers are incredibly difficult to change and their misuse can continue for years into the future.  The GAO states that victims of identity theft face "substantial costs and inconvenience repairing damage to their credit records," as well the damage to their "good name."

77.     As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without

20

limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

78.    Additionally, Defendant's wrongful actions and/or inaction directly and/or proximately caused the theft and dissemination into the public domain of Plaintiff's and the other Class Members' PHI and PII without their knowledge, authorization and/or consent.   As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, Plaintiff and the other Class Members have incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy, (ii) the imminent, immediate and continuing increased risk of identity theft, identity fraud and/or medical fraud, (iii) out-of-pocket expenses to purchase credit monitoring, internet monitoring, identity theft insurance and/or other Breach risk mitigation products, (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft, identity fraud and/or medical fraud pressed upon them by the Breach, including the costs of placing a credit freeze and subsequently removing a credit freeze, (v) the value of their time spent mitigating the increased risk of identity theft, identity fraud and/or medical fraud pressed upon them by the Breach and (vi) the lost benefit of their bargain when they paid for their privacy to be protected and it was not.

## **CLASS ACTION ALLEGATIONS**

79.    Pursuant to Rule 52.08 of the Missouri Rules of Civil Procedure, Plaintiff brings this class action as a class action on behalf of herself and the following Class of Missouri citizens who are similarly situated individuals:

**All citizens who were patients or the parents/guardians of patients of Defendants since August 31, 2016 and whose PHI and/or PII was disclosed by Defendants to unauthorized third parties.**

80.     On information and belief, the putative Class is comprised of thousands of individuals making joinder impracticable.  Disposition of this matter as a class action will provide substantial benefits and efficiencies to the Parties and the Court.

81.     The rights of Plaintiff and each other Class Member were violated in a virtually identical manner as a direct and/or proximate result of Defendant's willful, reckless and/or negligent actions and/or inaction and the resulting Breach.

82.     Questions of law and fact common to all Class Members exist and predominate over any questions affecting only individual Class Members including, *inter alia*:

       a)    Whether Defendants willfully, recklessly and/or negligently failed to maintain and/or execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and the other Class Members' PHI and/or PII;

       b)    Whether Defendants were negligent in failing to properly safeguard and protect Plaintiff's and the other Class Members' PHI and/or PII;

       c)    Whether Defendants owed a duty to Plaintiff and the other Class Members to exercise reasonable care in safeguarding and protecting their PHI and/or PII;

       d)    Whether Defendants breached its duty to exercise reasonable care in failing to safeguard and protect Plaintiff's and the other Class Members' PHI and/or PII;

       e)    Whether Defendants were negligent in failing to safeguard and protect Plaintiff's and the other Class Members' PHI and/or PII;

f)    Whether, by publicly disclosing Plaintiff's and the other Class Members' PHI and/or PII without authorization, Defendants invaded their privacy; and

g)    Whether Plaintiff and the other Class Members sustained damages as a result of Defendants' failure to safeguard and protect their PHI and/or PII.

83.    Plaintiff and his counsel will fairly and adequately represent the interests of the other Class Members.  Plaintiff has no interests antagonistic to, or in conflict with, the other Class Members' interests.  Plaintiff's lawyers are highly experienced in the prosecution of consumer class action and data breach cases.

84.    Plaintiff's claims are typical of the other Class Members' claims in that Plaintiff's claims and the other Class Members' claims all arise from Defendant's failure to properly safeguard and protect their PHI and PII.

85.    A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiff's and the other Class Members' claims.  Plaintiff and the other Class Members have been harmed as a result of Defendant's wrongful actions and/or inaction and the resulting Breach.  Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Defendant's conduct.

86.    Class certification, therefore, is appropriate pursuant to Missouri Rule 52.08(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

23

87.     Class certification also is appropriate pursuant to Missouri Rule 52.08(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

88.     The expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits in order to vindicate their rights.  Absent a class action, Defendants will retain the benefits of their wrongdoing despite its serious violations of the law.

## COUNT I
## BREACH OF IMPLIED CONTRACT

89.     The preceding factual statements and allegations are incorporated herein by reference.

90.     Plaintiff and the other Class Members, as part of their agreement with Defendants, provided Defendants their PHI and PII.

91.     In providing such PHI and PII, Plaintiff and the other Class Members entered into an implied contract with Defendant, whereby Defendants became obligated to reasonably safeguard Plaintiff's and the other Class members' PHI and PII.

92.     Under the implied contract, Defendants were obligated to not only safeguard the PHI and PII, but also to provide Plaintiff and Class Members with prompt, adequate notice of any Data Breach or unauthorized access of said information.

93.     Defendants breached the implied contract with Plaintiff and the other Class Members by failing to take reasonable measures to safeguard their PHI and PII.

24

94.     As a direct result of Defendants' breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

95.     Plaintiff and the other Class Members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and, (vi) the increased risk of identity theft. At the very least, Plaintiff and Class members are entitled to nominal damages.

## COUNT II
## NEGLIGENCE

96.     The preceding factual statements and allegations are incorporated herein by reference.

97.     Defendants owed, and continues to owe, a duty to Plaintiff and the other Class Members to safeguard and protect their PHI and PII.

98.     Defendants breached its duty by failing to exercise reasonable care and failing to safeguard and protect Plaintiff's and the other Class Members' PHI and PII.

99.     It was reasonably foreseeable that Defendants' failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Class Members' PHI and PII would result in an unauthorized third party gaining access to such information for no lawful purpose.

100.    As a direct result of Defendants' breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

101.    Plaintiff's and the other Class members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and, (vi) the increased risk of identity theft.  At the very least, Plaintiff and the other Class members are entitled to nominal damages.

102.    Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) negligence at common law.

## COUNT III
## INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS

103.   The preceding factual statements and allegations are incorporated herein by reference.

104.   Plaintiff's and the other Class Members' PHI and PII was (and continues to be) sensitive and personal private information.

105.   By virtue of Defendant's failure to safeguard and protect Plaintiff's and the other Class Members' PHI and PII and the resulting Breach, Defendants wrongfully disseminated Plaintiff's and the other Class Members' PHI and PII to unauthorized persons.

106.   Dissemination of Plaintiff's and the other Class Members' PHI and PII is not of a legitimate public concern; publicity of their PHI and PII was, is and will continue to be offensive to Plaintiff, the other Class Members and all reasonable people. The unlawful disclosure of same violates public mores.

107.   As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

108.   Plaintiff and the other Class members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-

pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and, (vi) the increased risk of identity theft.  At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

109.    Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) an invasion of Plaintiff's and the other Class Members' privacy by publicly and wrongfully disclosing their private facts (*i.e.*, their PHI and PII) without their authorization or consent.

## COUNT IV
## BREACH OF FIDUCIARY DUTY OF CONFIDENTIALITY

110.    The preceding factual statements and allegations are incorporated herein by reference.

111.    At all times relevant hereto, Defendants owed, and owes, a fiduciary duty to Plaintiff and the proposed class pursuant to Missouri common law, to keep Plaintiff's medical and other PHI and PII information confidential.

112.    The fiduciary duty of privacy imposed by Missouri law is explicated under the procedures set forth in the Health Insurance Portability and Accountability Act Privacy Rule, including, without limitation the procedures and definitions of 45 C.F.R. §160.103 and 45 C.F.R. §164.530 which requires a covered entity, health care provider, to apply appropriate administrative, technical, and physical safeguards to protect the privacy of patient medical records.

28

113.    Defendants breached their fiduciary duty to Plaintiff by disclosing Plaintiff and the other Class Members PHI and PII to unauthorized third parties.

114.    As a direct result of Defendant's breach of fiduciary duty of confidentiality and the disclosure of Plaintiff's confidential medical information, Plaintiff and the proposed Class Members suffered damages.

115.    As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

116.    Plaintiff and the other Class Members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and, (vi) the increased risk of identity theft. At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

**COUNT V**
**VIOLATIONS OF MISSOURI MERCHANDISING PRACTICES ACT, MO. REV. STAT. § 407.010 et seq.**

29

117.    The preceding factual statements and allegations are incorporated herein by reference.

118.    RSMo. 407.020 prohibits the use of any "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce"…

119.  An "unfair practice" is defined by Missouri law, 15 CSR 60-8.020, as any practice which:

(A) Either-

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

120.    An "unfair practice is defined by Missouri law,

15 CSR 60-8.020 (1)(B) provides that an "Unfair Practice in General" is

(1) An unfair practice is any practice which –

    (A)    Either –

        1. Offends any public policy as it has been established by the Constitution,

           statutes or common law of this state, or by the Federal Trade Commission,

           or its interpretive decisions; or

        2. Is unethical, oppressive or unscrupulous; and

(B)Presents a risk of, or causes, substantial injury to consumers.

30

15CSR 60-8.040 provides that an "Unfair Practice is:

An unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in <u>any manner fail to act in good faith</u>.

121.    Plaintiff and Defendants are "persons" within the meaning of section 407.010 (5).

122.    Merchandise is defined by the MMPA, to include the providing of "services" and, therefore, encompasses Healthcare services.  Healthcare services are a good.

123.    Efforts to maintain the privacy and confidentiality of medical records are part of the healthcare services associated with a good.

124.    Maintenance of medical records are "merchandise" within the meaning of section 407.010(4).

125.    Plaintiff's and the Class' goods and services purchased from Defendants were for "personal, family or household purposes" within the meaning of the Missouri Merchandising Practices Missouri Revised Statutes.

126.    As set forth herein, Defendant's acts, practices and conduct violate section 407.010(1) in that, among other things, Defendants have used and/or continues to use unfair practices, concealment, suppression and/or omission of material facts in connection with the advertising, marketing, and offering for sale of services associated with healthcare services.  Such acts offends the public policy established by Missouri statute and constitute an "unfair practice" as that term is used in Missouri Revised Statute 407.020(1).

127.    Defendants' unfair, unlawful and deceptive acts, practices and conduct include: (1) representing to its patients that it will not disclose their sensitive personal health information to an unauthorized third party or parties; (2) failing to implement security measures such as securing the records in a safe place; and (3) failing to train personnel.

128.    Defendant's conduct also violates the enabling regulations for the MMPA because it: (1) offends public policy; (2) is unethical, oppressive and unscrupulous; (3) causes substantial injury to consumers; (4) it is not in good faith; (5) is unconscionable; and (6) is unlawful.  *See* Mo Code Regs. Ann tit. 15, Section 60-8.

129.    As a direct and proximate cause of Defendant's unfair and deceptive acts, Plaintiff and members of the Class have suffered damages in that they (1) paid more for medical record privacy protections than they otherwise would have, and (2) paid for medical record privacy protections that they did not receive.  In this respect, Plaintiff and members of the Class have not received the benefit of the bargain and have suffered an ascertainable loss.

130.    As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

131.    Plaintiff, on behalf of themselves and the Class, seek actual damages for all monies paid to Defendants in violation of the MMPA.   In addition, Plaintiff seeks attorneys' fees.

## COUNT VI
## NEGLIGENT TRAINING AND SUPERVISION

132.    The preceding factual statements and allegations are incorporated herein by reference.

133.    At all times relevant hereto, Defendants owe a duty to Plaintiff and the Class to hire competent employees and agents, and to train and supervise them to ensure they recognize the duties owed to their patients and their parents.

134.    Defendants breached its duty to Plaintiff and the member of the Class by allowing its employees and agents to give access to patient medical records to an unauthorized user.

135.    As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

136.    Plaintiff and the other Class members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-

33

pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and, (vi) the increased risk of identity theft. At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

137.   Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) an invasion of Plaintiff's and the other Class Members' privacy by publicly and wrongfully disclosing their private facts (*i.e.*, their PHI and PII) without their authorization or consent.

## COUNT VII
## NEGLIGENCE *PER SE*

138.   Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein

139.   Plaintiff was under the medical care of the Defendant.

140.   The Defendants are covered entities and/or business assoc for purposes of HIPAA.

141.   Plaintiff is a member of the class HIPAA and HITECH were created to protect.

142.   Plaintiff's private health information is the type of information HIPAA and HITECH were created to protect. HIPAA and HITECH were created to protect against the wrongful and unauthorized disclosure of an individual's health information.

34

143.   The Defendants gave protected medical information to an unauthorized third party or unauthorized third parties without the written consent or authorization of Plaintiff.

144.   The Defendants gave protected medical information to unauthorized third parties without Plaintiff's oral consent or written authorization.

145.   The information disclosed to an unauthorized third party or unauthorized third parties included private health information about medical treatment.

146.   The Defendants' disclosure of the private health information of Plaintiff without consent or authorization is a violation of HIPAA and HITECH and is negligence *per se*.

147.   Alternatively, Defendants violated HIPAA and HITECH in that it did not reasonably safeguard the private health information of Plaintiff from any intentional or unintentional use or disclosure that is in violation of the standards, implementation specifications or other requirements pursuant to HIPAA and HITECH including, but not limited to, 42 C.F.R. §§ 164.302-164.318, 45 C.F.R. § 164.500, *et seq*, and 42 U.S.C. §17902, and was therefore negligent *per se*.

148.   As a direct result of Defendant's negligence, Plaintiffs suffered damages and injuries, including, without limitation, loss of the benefit of their bargain, a reduction in value of their private health information, loss of privacy, loss of medical expenses, loss of trust, loss of confidentiality, embarrassment, humiliation, emotional distress, and loss of enjoyment of life.

149.   Plaintiff and the other Class members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of

35

the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and, (vi) the increased risk of identity theft. At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

150.    As a direct result of Defendant's negligence, Plaintiff have a significantly increased risk of being future victims of identity theft relative to what would be the case in the absence of the Defendant's wrongful acts.

151.    As a direct result of Defendant's negligence, future monitoring, in the form of identity-theft or related identity protection is necessary in order to properly warn Plaintiffs of, and/or protect Plaintiffs from, being a victim of identity theft or other identity-related crimes.

152.    Plaintiff, individually and on behalf of the Class, seek actual damages for all monies paid to Defendants in violation of the HIPAA and HITECH.  In addition, Plaintiff seeks attorneys' fees.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Petition, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representatives and appointing Plaintiff's counsel as Lead Counsel for the Class;

36

B.      Declaring that Defendants breached their implied contract with Plaintiff and Class Members;

C.      Declaring that Defendants negligently disclosed Plaintiff's and the Class Members PHI and PII;

D.      Declaring that Defendants have invaded Plaintiff's and Class Members' privacy;

E.      Declaring that Defendants breached their fiduciary duty to Plaintiff and the Class Members;

F.      Declaring that Defendants breached their implied contract with Plaintiff and the Class Members;

G.      Declaring that Defendants violated the Missouri Merchandising Practices Act;

H.      Declaring that Defendants were negligent by negligently training and supervising its employees and agents;

I.      Ordering Defendants to pay actual damages to Plaintiff and the Class Members;

J.      Ordering Defendants to properly disseminate individualized notice of the Breach to all Class Members;

K.      For an Order enjoining Defendants from continuing to engage in the unlawful business practices alleged herein;

L.      Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff;

M.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

N.      Ordering such other and further relief as may be just and proper.

## JURY DEMAND

37

Plaintiff, on behalf of herself and the other Class Members, respectfully demands a

trial by jury on all of her claims and causes of action so triable.

Respectfully submitted,

_____
Maureen M. Brady     MO #57800
Lucy McShane          MO #57957
Nicholas J. Luedecke  MO #72907
McShane & Brady, LLC
1656 Washington Street, Suite 120
Kansas City, MO 64108
Telephone:  (816) 888-8010
Facsimile:  (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
          lmcshane@mcshanebradylaw.com
          nick@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFFS**

**And**

Anne Schiavone        MO #49349
Holman Schiavone, LLC.
4600 Madison Avenue, Suite 810
Kansas City, MO 64112
Telephone: (816) 283-8738
Facsimile: (816) 283-8739
Email: aschiavone@hslawllc.com
**ATTORNEY FOR PLAINTIFFS**

38